UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

PRIMORIS ENERGY SERVICES                                CIVIL ACTION
CORPORATION

VERSUS                                                  NO. 18-5839

NEW DAY ALUMINUM, LLC.                                  SECTION "R" (5)

## ORDER AND REASONS

Before the Court is defendant's motion to compel arbitration and to stay litigation, on the ground that the contracts on which plaintiff's cause of action is based contain a binding arbitration provision.[1] Because the Court finds that this dispute must be resolved in accordance with the dispute avoidance and resolution program attached to the contracts, defendant's motion is granted.

## I.   BACKGROUND

This case arises from a contract dispute.[2] Plaintiff Primoris Energy Services Corporation is a licensed contractor.[3] In October 2017, plaintiff entered into two separate written agreements with Noranda Alumina to

---

[1]   R. Doc. 11.
[2]   R. Doc. 1.
[3]   *Id.* at 1 ¶ 2.

provide labor, equipment, and materials for construction work at Noranda's refinery in Gramercy, Louisiana.[4] Defendant New Day Aluminum, LLC is the parent company of Gramercy Holdings I LLC, which does business as Noranda Alumina.[5] Plaintiff alleges that it completed the work in accordance with the terms of the contracts, but that defendant has "failed and/or refused" to pay $1,211,100.41 of the $1,320,527.88 plaintiff is owed.[6] On June 12, 2018, plaintiff filed this lawsuit, alleging causes of action for breach of contract, open account, and unjust enrichment.[7] Plaintiff seeks the amounts due under the contracts and consequential damages.[8]

On July 26, 2018, defendant filed this motion to compel arbitration and stay proceedings.[9] Defendant argues that both contracts underlying plaintiff's claims contain binding arbitration provisions.[10] Plaintiff opposes the motion.[11]

---

[4] *Id.* at 2 ¶ 6.
[5] R. Doc. 11-2 at 1; *see also* R. Doc. 1 at 2-3 ¶¶ 7-8;
[6] R. Doc. 1 at 4 ¶¶ 12-15; *see also* R. Doc. 11-2 at 4, 12.
[7] R. Doc. 1 at 5-7.
[8] *Id.* at 4 ¶ 16.
[9] R. Doc. 11.
[10] *Id.*
[11] R. Doc. 12.

## II. DISCUSSION

The Federal Arbitration Act (FAA), 9 U.S.C. §§ 1-16,[12] expresses a strong federal policy in favor of enforcing arbitration agreements. *See, e.g.*, *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 217-18 (1985); *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); *Safer v. Nelson Fin. Group Inc.*, 422 F.3d 289, 294 (5th Cir. 2005). Section 3 of the Act provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3.

---

[12] The FAA governs this case because the contracts expressly contemplate interstate performance in requiring plaintiff, a Texas corporation, to perform the drainage improvements and paving work at Noranda's project site in Gramercy, Louisiana. R. Doc. 11-2 at 3, 11. The contracts thus "evidenc[e] a transaction involving commerce." 9 U.S.C. § 2 (2006); *see also Specialty Healthcare Mgmt., Inc. v. St. Mary Par. Hosp.*, 220 F.3d 650, 654 (5th Cir. 2000) (explaining that the term "commerce" under the Federal Arbitration Act is to be broadly construed); *Jones v. Tenet Health Network, Inc.*, No. 96-3107, 1997 WL 180384, at *2 (E.D La. Apr. 7, 1997) (providing that an agreement to arbitrate evidences a transaction involving commerce when it involves any contractual activity facilitating or affecting commerce even tangentially).

The FAA expresses a liberal federal policy favoring arbitration. *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 346 (2011). As a result, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25. To determine whether to compel parties to arbitrate, the Court conducts a two-step inquiry. The Court first determines whether the parties agreed to arbitrate the dispute—*i.e.*, whether there is a valid agreement to arbitrate and whether the dispute in question falls within the scope of that agreement. *See JP Morgan Chase & Co. v. Conegie*, 492 F.3d 596, 598 (5th Cir. 2007). The Court next considers "whether any federal statute or policy renders the claims non-arbitrable." *Id.* (citations omitted). Here, the parties dispute only whether the contracts underlying plaintiff's claims contain a binding arbitration agreement.

Defendant, as Noranda's parent company, is not a signatory to the contracts underlying this action. Plaintiff wisely does not oppose defendant's motion on this basis. Even as a non-signatory, defendant may compel plaintiff to resolve this dispute in accordance with the dispute avoidance procedures described in the contracts, because plaintiff's action is based entirely on an alleged breach of those contracts. *See Grigson v. Creative Artists Agency LLC*, 210 F.3d 524, 527 (5th Cir. 2000) (permitting a non-

signatory to a contract with an arbitration clause to compel arbitration when "the action is intertwined with, and dependent upon, that contract").

The Court finds that both contracts evidence an agreement between the parties to arbitrate disputes arising from performance of the contracts. Immediately above the signature line in each contract is a notification that the agreement "CONTAINS A BINDING ARBITRATION PROVISION WHICH MAY BE ENFORCED BY THE PARTIES."[13] Each contract also contains a paragraph stating that any claims initiated by plaintiff "shall be in accordance with the Noranda Dispute Avoidance and Resolution Program which is an Exhibit to the Agreement."[14] The Dispute Avoidance and Resolution Program (DARP) states that the parties "agree to be bound by the dispute avoidance and resolution procedures set forth" in the DARP, "and to forbear institution of any legal action other than an action to enforce" the DARP's provisions.[15] The DARP further states that "[a]ll Claims arising under the Agreement shall be made as provided herein and all disputes arising under or related to performance under the Agreement . . . shall be resolved as provided herein."[16]

---

[13] R. Doc. 11-2 at 5, 13 (emphasis in original).
[14] *Id.* at 6, 14.
[15] *Id.* at 9, 17.
[16] *Id.*

The DARP contains detailed procedures for how the parties are to resolve disputes arising from the contracts in lieu of litigation. Under the DARP, a "dispute" exists when "either party timely objects . . . to a Claim."[17] A "Claim" under the DARP includes a "written request" by the plaintiff to Noranda "for payment for field authorized work."[18] In the event of a dispute, the DARP provides that plaintiff's "senior sales management or engineering personnel shall meet with Noranda's representative" within fifteen days after the dispute first arises in order to attempt a resolution.[19] If those parties fail to resolve the dispute, senior executives for both parties must meet within thirty days after the dispute arises.[20] If these initial, direct discussions fail, the DARP provides that "either party may make written demand on the other party for mediation by an independent mediator."[21] If the parties are unable to resolve the dispute in mediation, the DARP further provides that "either party may make written demand on the other party that all current disputes be submitted to binding arbitration."[22] Once either party makes its written

---

[17] *Id.*
[18] *Id.*
[19] *Id.*
[20] *Id.*
[21] *Id.*
[22] *Id.* at 9-10, 17-18.

demand for arbitration, the DARP requires the parties to proceed pursuant to specific procedures.[23]

The contracts and the DARP thus require the parties to attempt to resolve this dispute through direct discussions between their senior representatives, and then authorize either party to demand mediation or arbitration if those discussions are unsuccessful. Plaintiff nonetheless argues that the arbitration provision in the DARP is not binding because it provides that in the event a dispute cannot be resolved through mediation, "either party *may* make written demand" for binding arbitration.[24] Plaintiff contends that by using the word "may," the parties did not intend to give one party the unilateral right to compel binding arbitration.[25] But the provision itself belies plaintiff's interpretation. By authorizing "either party" to make a "written demand" on the other, the provision makes clear that the decision to initiate arbitration need not be mutual. Rather, under the provision either party has the ability force the other into binding arbitration in the event mediation is unsuccessful. The word "may" in this context merely establishes that each party has the option to compel arbitration or abandon its claims.

---

[23]   *See id.* at 10, 18.
[24]   R. Doc. 12 at 5; R. Doc. 11-2 at 9-10, 17-18 (emphasis added).
[25]   R. Doc. 12 at 4-6.

7

Viewing the contracts and the DARP as a whole reinforces the Court's interpretation of this provision. First, pursuant to the DARP, strict procedural rules are triggered once "either party" makes a "written demand" of the other to submit a dispute to arbitration.[26] Once a demand is made by either party, the DARP states that senior executives of the parties "*shall* meet" to discuss the demand.[27] It then states that the parties "*shall* agree on an arbitrator or arbitrators to resolve the disputes."[28] Next, unless the parties agree otherwise, the DARP states that arbitration "*shall* occur in Nashville, Louisiana, and the arbitration *shall* occur as soon as possible."[29] The DARP contains numerous other requirements for how the arbitration proceeding must be conducted.[30] And again, all of these requirements are triggered when "either party" makes a "written demand" on the other that a dispute be submitted to "binding arbitration."[31] The DARP therefore unambiguously requires the parties to engage in its arbitration procedures

---

[26] R. Doc. 11-2 at 10, 18.
[27] *Id.* (emphasis added).
[28] *Id.* (emphasis added).
[29] *Id.* (emphasis added).
[30] *See, e.g.*, *id.* ("If the parties have not previously exchanged copies of all relevant documents, each party *shall* provide to the other party[] . . . copies of all documents which each party considers relevant. . . ." (emphasis added)); *id.* ("Unless otherwise agreed, . . . all arbitration[] . . . *shall* be conducted in accordance with the Commercial Arbitration Rules of the American Arbitration Association. . . ." (emphasis added)).
[31] *Id.*

8

when mediation is unsuccessful and either party wishes to settle the dispute in arbitration.

Second, the contracts state that all "initiated Claims *shall* be in accordance" with the DARP.[32] The DARP in turn states that the parties are "bound" by its "dispute avoidance and resolution procedures," and that the parties must "forbear institution of any legal action other than an action to enforce" the DARP's provisions.[33] Plaintiff argues that the latter provision does not forbid this lawsuit because (1) the term "legal action" necessarily includes arbitration, so the provision in fact precludes any arbitration other than as provided by the DARP, and (2) its breach of contract lawsuit is in fact an action to enforce the DARP's provisions, because its arbitration provision is permissive and requires a mutual agreement to initiate arbitration.[34]

These arguments are nonsensical. They are premised on the contention that one party may not demand arbitration under the contracts in the event mediation fails. The Court has already rejected this argument. A far more sensible interpretation of this provision is that by agreeing to forbear "legal action," the parties agreed to resolve their contractual disputes through direct discussions, mediation, and arbitration, pursuant to the terms

---

[32]    *Id.* at 6, 14 (emphasis added).
[33]    *Id.* at 9, 17.
[34]    R. Doc. 12 at 8.

of the DARP, rather than bringing those disputes to state or federal court. *See Vaughan v. P.J. McInerney & Co.*, 12 So. 2d 516, 519 (La. 1943) ("Courts should not assume that clauses written in a contract were intended to be ambiguous, repugnant, or contradictory. . . ."); *see also* La. Civ. Code art. 2046 ("When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent."). And this lawsuit is not, as plaintiff suggests, in pursuit of "claims under the provisions of the [DARP]."[35] Plaintiff's claims arise from an alleged violation of the underlying contracts, not the DARP.[36]

Multiple circuit courts have come to the same conclusion the Court reaches today when analyzing similar arbitration provisions. *See Deaton Truck Line, Inc. v. Local Union 612*, 314 F.2d 418, 422 (5th Cir. 1962); *Am. Italian Pasta Co. v. Austin Co.*, 914 F.2d 1103, 1104 (8th Cir. 1990); *Austin v. Owens-Brockway Glass Container, Inc.*, 78 F.3d 875, 879 (4th Cir. 1996). The arbitration provision in *Deaton* provided that if the parties fail to resolve a dispute, "the dispute may be submitted to arbitration and the decision of the arbiter shall be final." 314 F.2d at 421. The Fifth Circuit held that the provision required the parties to arbitrate a dispute if one party made a

---

[35] *Id.*
[36] *See* R. Doc. 1 at 4 ¶¶ 13-14.

written demand for it, reasoning that the word "'may' should be construed to give either aggrieved party the option to require arbitration." *Id.* at 422. *American Italian Pasta* involved a similar arbitration provision, which provided that should the parties be unable to resolve their dispute, it "may be submitted to arbitration." 914 F.2d at 1104. The Eight Circuit, citing *Deaton*, held that the "structure and language of the contract" revealed that the parties intended arbitration to be mandatory. *Id.* The court found that "[t]here would be no reason for the arbitration language [in the contract] if the parties intended it to be permissive, for the parties could voluntarily have agreed to submit a dispute to arbitration in the absence of such a provision." *Id.* Finally, in *Austin*, the Fourth Circuit held that a similar provision required arbitration in the event one party demanded it. 78 F.3d at 879. The court reasoned that the use of the word "may" gave "an aggrieved party the choice between arbitration and abandonment of his claim." *Id.*

The arbitration provisions here similarly must be read as requiring the parties to submit to arbitration if one party makes a demand on the other, and all the preconditions in the DARP have been met. Plaintiff's interpretation would render the arbitration provisions superfluous, because arbitration would be required only if the parties mutually agreed to it, and such an agreement could take place with or without the provisions. *See*

11

*American Italian Pasta*, 914 F.2d at 1104; *see also* La. Civ. Code art. 2049 ("A provision susceptible of different meanings must be interpreted with a meaning that renders it effective. . . .").

*Retractable Technologies Incorporated v. Abbott Laboratories Incorporated*, 281 F. App'x 275 (5th Cir. 2008), on which plaintiff principally relies,[37] is clearly distinguishable. There, the contract provided that if the parties fail to resolve a dispute, the dispute "may be resolved by arbitration in the manner described" by an attached document titled "Alternative Dispute Resolution." *Id.* at 276. That document provided that "either party may initiate an arbitration proceeding" to resolve the dispute. *Id.* The Fifth Circuit, in a divided panel decision, concluded that the permissive language in the contract indicated the parties did not intend to be bound by the procedures in the Alternative Dispute Resolution document absent mutual agreement. *Id.* at 275-76. The panel further held that the Alternative Dispute Resolution was a "subordinate section that only outline[d] the procedural requirements of arbitration once the parties mutually agree[d] to arbitrate the dispute." *Id.* Here, by contrast, the underlying contracts require the

---

[37] *See* R. Doc. 12 at 5-6. *Retractable Technologies* is an unpublished opinion issued after January 1, 2006, and is therefore not precedent or binding authority under Fifth Circuit Rule 47.5.4.

12

parties to resolve any disputes pursuant to the DARP.[38] The DARP does not merely provide that disputes "may be resolved" by arbitration, but authorizes either party to make a "written demand" for the dispute to be settled via binding arbitration.[39] A "demand" suggests a command, not a request. And as addressed earlier, the DARP contains detailed requirements for how the parties are to proceed once either party makes an arbitration demand.

Plaintiff's citation to *Cerveceria Cuauhtemoc Moctezuma S.A. de C.V. v. Montana Beverage Company*, 330 F.3d 284 (5th Cir. 2003), is similarly unavailing. There, the defendant did not contend that the contract contained a binding arbitration provision. *Cerveceria*, 330 F.3d at 286. The defendant instead argued that the contracting parties clearly intended to submit all disputes to arbitration because the agreement incorporated by reference the Texas Beer Industry Fair Dealing Law, which contains an arbitration provision. *Id.* at 287. The Fifth Circuit upheld the district court's determination that mere reference to this statute, and the statute's equivocal language, did not evidence an agreement between the parties to arbitrate all disputes arising from the underlying contract. *Id.* For the reasons already addressed, the Court does find such an agreement between the parties here.

---

[38] R. Doc. 11-2 at 6, 14.
[39] *Id.* at 10, 18.

But even if *Retractable Technologies* and *Cerveceria* were not distinguishable from this action, and therefore directly contradicted the holding in *Deaton Truck Line*, the Court would still be bound by *Deaton Truck Line* under the "rule of orderliness." The "rule of orderliness" provides that "one panel of [the Fifth Circuit] may not overturn another panel's decision, absent an intervening change in the law, such as by statutory amendment, or the Supreme Court, or [an] *en banc* court." *Jacobs v. Nat'l Drug Intelligence Ctr.*, 548 F.3d 375, 378 (5th Cir. 2008). This is true even if the first "panel's interpretation of the law appears flawed." *Id.* All three of these Fifth Circuit opinions were panel decisions, so neither *Retractable Technologies* nor *Cerveceria* can be interpreted as voiding the decision in *Deaton Truck Line*. The decision in *Deaton Truck Line*, as the earliest decision of the three, is therefore the authority that binds this Court.

Next, the Court finds that the present dispute falls squarely within the scope of the arbitration agreement. Plaintiff initiated this action to compel defendant to pay it the amount it is allegedly owed under the two contracts. The contracts require that "claims" be resolved in accordance with the DARP,[40] and the DARP defines "claims" to include "a request for payment

---

[40] *Id.* at 6, 14.

for field authorized work."[41] Finally, there is no federal policy or statute that renders plaintiff's claims non-arbitrable. The parties therefore must resolve this dispute in accordance with the terms of the DARP.[42]

## III. CONCLUSION

For the foregoing reasons, the Court GRANTS defendant's motion. Plaintiff's action is STAYED pending the parties' completion of the dispute resolution procedures contained in the DARP.

New Orleans, Louisiana, this __19th__ day of November, 2018.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE

---

[41] *Id.* at 9, 17.
[42] The Court notes that while defendant has moved to compel *arbitration*, the DARP in fact requires the parties to negotiate the dispute directly, and then engage in mediation, before either party can make a written demand for binding arbitration. *Id.* at 9-10, 17-18. There is no indication in the record that the parties have engaged in the other procedures outlined in the DARP.